# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| BARBARA MOLLBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> v.<br><br>NATIONWIDE CREDIT, INC.,<br><br>   Defendant. | Case No.: 19-cv-618<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Barbara Mollberg is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Nationwide Credit, Inc. ("NCI") is a debt collection agency with its principal offices located at 1000 Abernathy Road, Suite 200, Atlanta, GA 30328.

6. NCI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. NCI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Nationwide is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

8. On or about May 6, 2018, NCI mailed a debt collection letter to Plaintiff regarding an alleged debt owed "CHASE BANK USA, N.A." A copy of this letter is attached to this complaint as Exhibit A.

9. Upon information and belief, the alleged debt that NCI was attempting to collect was incurred by use of a credit card, used only for personal, family, or household purposes.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Upon information and belief, Exhibit A is a form debt collection letter used by NCI to attempt to collect alleged debts.

12. Exhibit A contains the following settlement offer:

> We are offering you an opportunity to settle this account for **$1,221.08**. This offer is valid for a one-time payment of the settlement amount and is due on or before **05/21/2018**. This offer is contingent upon NCI receiving the payment pursuant to the payment schedule outlined in this letter.

13. The letter purports to offer settling the debt for 40% of the total alleged debt.

14. The settlement offer in Exhibit A falsely states: "This offer is valid for a one-time payment of the settlement amount and is due on or before 5/21/2018. This offer is contingent upon NCI receiving the payment pursuant to the payment schedule outlined in the letter."

15. Upon information and belief, Nationwide had authority from the creditor to settle consumers' accounts for 40% of the amount owed, or less, at any time.

2

16. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

17. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

18. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

19. NCI does not use the safe harbor language in Exhibit A.

20. On or about May 21, 2018, the date the settlement offer included in Exhibit A was purportedly due, NCI mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

21. Upon information and belief, Exhibit B is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, Exhibit B is another form debt collection letter used by NCI to attempt to collect alleged debts.

23. Exhibit B also includes a settlement offer for $1,221.08, the same amount as the settlement offer included in Exhibit A.

3

24. Additionally, Exhibit B contains the following representations:

You can settle this account according to the payment arrangement shown in the table below:

| Payment No. | Payment Received by NCI | Payment Amount | Payment No. | Payment Received by NCI | Payment Amount |
|---|---|---|---|---|---|
| 1 | 06/04/2018 | $407.02 | | | |
| 2 | 07/05/2018 | $407.02 | | | |
| 3 | 08/06/2018 | $407.04 | | | |

25. The settlement offer in Exhibit B falsely states or implies that the settlement offer is valid only if payments are made as scheduled "according to the payment arrangement shown in the table below."

26. Like Exhibit A, Exhibit B thus states or implies the settlement offer contained therein is valid for a limited time period.

27. Like Exhibit A, Exhibit B also does not use the *Evory* safe harbor language.

28. The deadlines to respond to the settlement offers included in Exhibit A and Exhibit B are a sham. Upon information and belief, there is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

29. Plaintiff was confused by Exhibit A and Exhibit B.

30. The unsophisticated consumer would be confused by Exhibit A and Exhibit B.

31. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character,

4

amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a)..

32. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

33. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

34. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

35. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

6

## COUNT I – FDCPA

36. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

37. Exhibit A and Exhibit B include false statements to the effect that the settlement offer is for a limited time only.

38. Upon information and belief, the creditor and/or NCI would settle Plaintiff and class members' debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

39. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## CLASS ALLEGATIONS

40. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit A or Exhibit B to the complain in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between April 29, 2018, and April 29, 2019, inclusive, (e) that was not returned by the postal service.

41. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

42. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

43. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

44. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

45. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

46. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 29, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com